1  Jahan C. Sagafi (SBN 224887)
   jsagafi@outtengolden.com
2  Moira Heiges-Goepfert (SBN 326861)
   mhg@outtengolden.com
3  OUTTEN & GOLDEN LLP
   One California Street, 12th Floor
   San Francisco, CA 94111
4  Telephone: (415) 638-8800
   Facsimile: (415) 638-8810

5  Steven Elster (SBN 227545)
   steve.elster.law@gmail.com
6  LAW OFFICE OF STEVEN ELSTER
   785/E2 Oak Grove Road, No. 201
   Concord, CA 94518
7  Telephone: (925) 324-2159

   *Attorneys for Plaintiff and proposed Class Members*

8              UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9              OAKLAND/SAN FRANCISCO DIVISION

10 SHAWN CLAYBORNE, an individual, on      ) Case No.:
   behalf of himself, all others similarly situated,  )
   and all other aggrieved employees,        ) **COMPLAINT FOR**
11                                           )
              PLAINTIFF,                      ) **CLASS ACTION**
                                             )
12      vs.                                  ) (1)  UNPAID WAGES FOR ALL HOURS
                                             )      WORKED
13 CHEVRON CORPORATION, CHERNE              ) (2)  UNPAID WAGES FOR DOCKING
   CONTRACTING CORPORATION,                 )      EMPLOYEES FOR EARLY
   NEWTRON, LLC, THE NEWTRON                )      DEPARTURE
14 GROUP, LLC, and DOES 1-100, inclusive,   ) (3)  UNPAID MINIMUM WAGE
                                             ) (4)  FAILURE TO PROVIDE
              DEFENDANTS.                     )      ACCURATE  ITEMIZED WAGE
                                             )      STATEMENTS
15                                           ) (5)  FAILURE TO PAY ALL WAGES
                                             )      EACH PAYDAY
                                             ) (6)  WILLFUL FAILURE TO PAY FINAL
16                                           )      WAGES
                                             ) (7)  UNFAIR COMPETITION (Business &
                                             )      Professions Code §§ 17200 *et seq.*)
17                                           )
                                             ) **PAGA ACTION**
                                             )
18                                           ) (8)  PRIVATE ATTORNEYS GENERAL
                                             )      ACT VIOLATIONS (Labor Code §§
                                             )      2698 *et seq.*)
19                                           )
                                             )
20                                           ) **DEMAND FOR JURY TRIAL**
                                             )
21

        COMPLAINT FOR VIOLATIONS OF CALIFORNIA LABOR CODE AND UCL

Plaintiff Shawn Clayborne ("Plaintiff") alleges on behalf of himself and all those similarly situated and all other aggrieved employees as follows:

## SUMMARY OF CLAIMS

1.      Plaintiff was employed by Chevron Corporation ("Chevron"), Cherne Contracting Corporation ("Cherne"), Newtron, LLC ("Newtron"), and The Newtron Group, LLC ("Newtron Group") (together "Defendants") at Chevron's refinery in Richmond California.  He brings this action as a class action on behalf of himself and all others similarly situated and as a PAGA action on behalf of the State of California, himself, and all other aggrieved employees employed by Defendants in California ("Employees").

2.      Plaintiff alleges that Defendants violated and continue to violate the California Labor Code and Wage Order protections applicable to himself and Employees, specifically:

(a)     Defendants' policy and practice of failing to compensate Plaintiff and Employees for all hours worked at the start of their workdays, starting from the time Defendants require Plaintiff and Employees to report to designated parking lots for employer-mandated travel to their worksites;

(b)     Defendants' policy and practice of not compensating Plaintiff and Employees for all hours worked at the end of their workdays, including through the time Plaintiff and Employees are able to depart after employer-mandated travel from their worksites back to designated parking lots;

(c)     When Plaintiff and Employees leave early from designated parking lots, Defendants' policy and practice of docking their pay in increments of time that exceed the amount of time that Plaintiff and Employees have left early from work;

(d)     Defendants' policy and practice of failing to provide Plaintiff and Employees with complete and accurate itemized wage statements and to keep proper payroll records;

(e)     Defendants' policy and practice of failing to pay Plaintiff and Employees in a timely manner during Defendants' employment of them;

COMPLAINT FOR VIOLATIONS OF CAL. LAB. CODE AND UCL

(f)     Defendants' policy and practice of failing to pay Plaintiff and former Employees all wages due at the time of discharge, termination or departure and for willfully failing to pay all wages due; and

(g)     Defendants' policy and practice of violating California Business and Professions Code §§ 17200, *et seq.*, for engaging in unlawful, unfair, or deceptive business acts or practices.

3.     Plaintiff brings his claims under the California Labor Code, Wage Order 16-2001 of the California Industrial Welfare Commission ("Wage Order 16"), and the California Unfair Competition Law ("UCL") on behalf of himself and all Employees who worked in California from September 20, 2015 through the date of the final disposition of this action.

4.     Due to Defendants' violations of the California Labor Code as to Plaintiff and Defendants' other employees, there are aggrieved employees of Defendants pursuant to the Private Attorneys General Act, Labor Code §§ 2698 *et seq.*, ("PAGA").  Plaintiff thus also brings this action on behalf of the State of California, himself, and all of Defendants' aggrieved employees for civil penalties for violations of Labor Code §§ 201, 202, 203, 204, 204b, 210, 226(a), 226.3, 226.6, 558, 558.1, 1174(c) and (d), 1174.5, 1194, 1194.2, 1197, 1197.1, and 1199, and Wage Order 16.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

6.     Plaintiff and the members of the proposed class are citizens of states different from those of Defendants Cherne, Newtron, and Newtron Group.

7.     There are at least 100 members in the proposed class.

8.     During the three-year period preceding the filing of this action, at least one other class action lawsuit has been filed asserting some similar factual allegations against Defendant Cherne on behalf of some of the class members Plaintiff seeks to represent here, *Parker v. Cherne Contracting Corp*, No. 18-cv-1912-HSG (Complaint filed Feb. 13, 2018).

COMPLAINT FOR VIOLATIONS OF CAL. LAB. CODE AND UCL

9. Defendants are subject to personal jurisdiction in California because each Defendant conducts substantial business activity in California and engages in the unlawful acts described herein in California.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

11. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## INTRA-DISTRICT ASSIGNMENT

12. Venue is proper in either the San Francisco or Oakland Divisions of this District pursuant to 28 U.S.C. §§ 1391(b), (c)(2), (d), and Civil L.R. 3-2(c) and (d) because a substantial part of the events or omissions giving rise to the claims occurred in Contra Costa County.

## THE PARTIES

**I.     Plaintiff Shawn Clayborne**

13. Plaintiff Shawn Clayborne was employed by Chevron and Cherne at Chevron's petroleum refinery in Richmond, California from approximately January 2017 to approximately August 2018. Plaintiff was employed by Chevron, Newtron, and Newtron Group at Chevron's petroleum refinery in Richmond, California from approximately August 2018 to approximately December 2018.

**II.    Defendants**

**A.     Chevron Corporation**

14. Chevron is a Delaware corporation registered with the California Secretary of State and doing business in California.

15. Chevron is headquartered in San Ramon, California.

16. Within the last four years and during all times relevant to this Complaint, Chevron has employed Plaintiff and Employees in California pursuant to the California Labor Code and Wage Order 16.

COMPLAINT FOR VIOLATIONS OF CAL. LAB. CODE AND UCL

**B.**    **Cherne Contracting Corporation**

17.    Cherne is a Delaware corporation registered with the California Secretary of State and doing business in California.

18.    Cherne is headquartered in Eden Prairie, Minnesota.

19.    Within the last four years and during all times relevant to this Complaint, Cherne has employed Plaintiff and Employees in California pursuant to the California Labor Code and Wage Order 16.

**C.**    **Newtron, LLC**

20.    Newtron, LLC is a Delaware limited liability company registered with the California Secretary of State and doing business in California.

21.    Newtron, LLC is headquartered in Baton Rouge, Louisiana.

22.    Within the last four years, Newtron, LLC has employed Plaintiff and Employees in California pursuant to the California Labor Code and Wage Order 16.

**D.**    **Newtron Group**

23.    The Newtron Group, LLC is a Delaware limited liability company that, upon information and belief, conducts business in California, directly and through its wholly owned subsidiaries.

24.    Newtron Group is headquartered in Baton Rouge, Louisiana.

25.    Within the last four years, Newtron Group has employed Plaintiff and Employees in California pursuant to the California Labor Code and Wage Order 16.

**E.**    **DOES 1 through 100**

26.    DOES 1 through 100, inclusive, are sued herein under fictitious names.  Their true names and capacities are unknown to Plaintiff at this time.  When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities herein.  Plaintiff is informed and believes, and thereon alleges that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged herein, and that Plaintiff's damages as alleged herein were actually and/or proximately caused by such Defendants.

27.     Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant was the principal, agent, employer, owner, manager, managing agent, joint employer, employee, partner, servant, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for the conduct of them.  Plaintiff is also informed and believes and thereon alleges that pursuant to Labor Code § 558.1, each Defendant was an employer or other person acting on behalf of an employer, who violated, or caused to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violated, or caused to be violated, Labor Code §§ 203, 226, or 1194, and thus, may be held liable as the employer for such violation.  Plaintiff is further informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants, and that each Defendant acted pursuant to an agreement to do the things alleged herein.

**F.     Defendants Jointly Employed Plaintiff and Employees**

28.     At all relevant times, Plaintiff and Employees acted under the control, direction and supervision of Defendants in connection with Plaintiff's and Employees' hours worked, and such hours worked were within the usual course of Defendants' business.

29.     At all relevant times, Chevron and Cherne jointly employed Plaintiff and Employees in California by, inter alia, suffering or permitting them to work, and exercising joint control over their wages, hours and working conditions.

30.     Upon information and belief, Chevron and Cherne operated in concert and each retained and shared significant control over the terms and conditions of Plaintiff's and Employees' employment, including, without limitation, those terms and conditions related to the claims alleged herein.

31.     At all relevant times, Chevron, Newtron, and Newtron Group jointly employed Plaintiff and Employees in California by, inter alia, suffering or permitting them to work, and exercising joint control over their wages, hours and working conditions.

32.     Upon information and belief, Chevron, Newtron, and Newtron Group operated in concert and each retained and shared significant control over the terms and conditions of Plaintiff's and Employees' employment, including, without limitation, those terms and conditions related to the claims alleged herein.

33.     Chevron, together with Cherne, Newtron, and Newtron Group, respectively, exercised joint control over the terms and conditions of Plaintiff's and Employees' employment, directly or indirectly and jointly or severally through, inter alia: hiring and firing; supervising Plaintiff's and Employees' work at Chevron's worksites; training, evaluating, disciplining and promoting; scheduling and assigning work at Chevron's worksites; providing the facilities at which Plaintiff and Employees performed their required work; providing tools, equipment and materials necessary for Plaintiff and Employees to perform their work; providing parking lots, buses, and bus drivers for employer-mandated travel to and from Plaintiff's and Employees' worksites; tracking hours; controlling the equipment, policies, and procedures for "clocking" or "badging" in and out at the start and end of workdays; and instituting or enforcing the policies challenged herein with respect to employer-mandated travel, compensation, docking for early departures, and inaccurate wage statements.

34.     Cherne, together with Chevron, exercised joint control over the terms and conditions of Plaintiff's and Employees' employment, directly or indirectly and jointly or severally through, inter alia: hiring and firing; supervising Plaintiff's and Employees' work at Chevron's worksites; training, evaluating, disciplining and promoting; scheduling and assigning work at Chevron's worksites; providing tools, equipment and materials necessary for Plaintiff and Employees to perform their work; tracking hours; controlling or enforcing the policies and procedures for "clocking" or "badging" in and out at the start and end of workdays; paying wages, employment taxes and other benefits; providing Plaintiff and Employees with paystubs

and payroll tax information; and instituting or enforcing the policies challenged herein with respect to employer-mandated travel, compensation, docking for early departures, and inaccurate wage statements.

35.     Newtron and Newtron Group, together with Chevron, exercised joint control over the terms and conditions of Plaintiff's and Employees' employment, directly or indirectly and jointly or severally through, inter alia: hiring and firing; supervising Plaintiff's and Employees' work at Chevron's worksites; training, evaluating, disciplining and promoting; scheduling and assigning work at Chevron's worksites; providing tools, equipment and materials necessary for Plaintiff and Employees to perform their work; tracking hours; controlling or enforcing the policies and procedures for "clocking" or "badging" in and out at the start and end of workdays; paying wages, employment taxes and other benefits; providing Plaintiff and Employees with paystubs and payroll tax information; and instituting or enforcing the policies challenged herein with respect to employer-mandated travel, compensation, docking for early departures, and inaccurate wage statements.

## **FACTUAL BACKGROUND**

I.     **Defendants' Policy and Practice of Not Compensating Plaintiff or Employees for All Hours Worked at the Start and End of Their Workdays.**

    A.     **Unpaid Time at Start of Workday**

        1.     **Defendants require Plaintiff and Employees to report at specific times of day to designated parking lots to be transported by Defendants to worksites at Chevron's refinery.**

36.     When Defendants employ Plaintiff and Employees at Chevron's refinery in Richmond, Defendants require them to report at specific times of day to designated parking lots, including parking lots known as "Gate 91" and the "Kellum lot." For example, Defendants require Plaintiff and Employees to report to designated parking lots by 6:10 a.m. Defendants then transport Plaintiff and Employees from the designated parking lots to their worksites at Chevron's refinery. Defendants transport Plaintiff and Employees in buses provided and paid for by Defendants. Defendants prohibit Plaintiff and Employees from using their own transportation to arrive directly at their worksites at Chevron's refinery. Plaintiff and Employees are subject to

1  Defendants' control beginning at the time that Defendants require them to report to designated

2  parking lots.

3      **2.    Defendants do not compensate Plaintiff and Employees beginning at
               the time Defendants require them to report to designated parking lots.**

4  37.    Defendants do not compensate Plaintiff and Employees beginning at the specified

5  times that Defendants require them to report to designated parking lots for employer-mandated

6  travel to their worksites at Chevron's refinery, such as at 6:10 a.m.  Instead, Defendants

7  compensate them beginning at a time after Defendants' buses have delivered Plaintiff and

8  Employees to their worksites at Chevron's refinery, such as at 6:30 a.m.

9

10     **B.    <u>Unpaid Time at End of Workday</u>**

       **1.    Defendants deliver Plaintiff and Employees back to designated
               parking lots after Defendants have stopped paying them.**

11

12  38.    At the end of the workday, Defendants require Plaintiff and Employees to be

13  bused from their worksites at Chevron's refinery back to designated parking lots.  Defendants

14  again transport Plaintiff and Employees in buses provided and paid for by Defendants.

15  Defendants pay Plaintiff and Employees until a time by which Defendants are supposed to have

16  delivered them back to the designated parking lots, such as 4:30 p.m.  However, there are

17  occasions when Defendants deliver Plaintiff and Employees back to the designated parking lots

18  after the intended time, or do not permit them to depart from the designated parking lots until

19  after the intended time, such as at 4:40 p.m.  On such occasions, Plaintiff and Employees are

20  subject to Defendants' control until Defendants deliver them back to the designated parking lots

21  and they are able to depart.  On such occasions, Defendants do not pay Plaintiff and Employees

22  through the time that Defendants deliver them back to the designated parking lots and Plaintiff

23  and Employees are able to depart.  Instead, Defendants stop paying Plaintiff and Employees at the

24  time by which Defendants were supposed to have delivered them back to the designated parking

25  lots, such as 4:30 p.m.

26

27

28

**II.**   **Defendants' Policy and Practice of Docking Wages from Plaintiff and Employees for Increments of Time in Excess of the Periods of Time at Issue When They Depart Early from Designated Parking Lots.**

39.    At the end of their workdays, Defendants pay Plaintiff and Employees up through a time by which Defendants intend to deliver them back to designated parking lots, such as 4:30 p.m.  However, Defendants sometimes deliver Plaintiff and Employees back to a parking lot early, prior to the intended time, such as at 4:20 p.m.  When Defendants deliver Plaintiff and Employees back to a parking lot early, Defendants require Plaintiff and Employees to remain at the parking lot until the time that Defendants had intended to deliver them back to the parking lot. For example, if Defendants intended to deliver Plaintiff and Employees to a parking lot by 4:30 p.m., but Defendants instead deliver them back to the parking lot at 4:20 p.m., Defendants require Plaintiff and Employees to remain at the parking lot until 4:30 p.m. before departing.  If instead of waiting at the parking lot until 4:30 p.m. to depart, Plaintiff and Employees depart prior to that time, such as at 4:28 p.m., Defendants dock their wages for longer increments of time, such as for 15 minutes.

**III.**   **Defendants' Policy and Practice of Failing to Provide Accurate Wage Statements.**

40.    Because Defendants do not pay Plaintiff and Employees for all hours worked, Defendants provide Plaintiff and Employees with wage statements that do not show their gross wages earned, their total hours worked, their net wages earned, or all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employees.

41.    Defendants also fail to keep payroll records showing Plaintiff's and Employees' total daily hours worked and total hours worked during each payroll period and applicable rates of pay.

**IV.    Defendants' Policy and Practice of Not Paying Plaintiff and Employees All Wages Earned Each Payday.**

42.    During Defendants' employment of Plaintiff and Employees, Defendants fail to pay Plaintiff and Employees all wages for all hours worked.  Thus, Defendants fail to pay Plaintiff and Employees all wages earned each payday.

**V.    Defendants' Policy and Practice of Failing to Pay, and Willfully Failing to Pay, All Wages Due to Plaintiff and Employees at the End of Their Employment.**

43.    At the end of Defendants' employment of Plaintiff and Employees, Defendants fail to pay them all wages for all hours worked.  Defendants' failure to pay all wages to Plaintiff and Employees at the end of their employment is willful and not inadvertent.

## CLASS ACTION ALLEGATIONS

44.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Clayborne brings claims for relief for violations of the California Labor Code, Wage Order 16 and UCL on behalf of all Employees as a class action with the Class defined as:

> Defendants' hourly employees who were not paid for all Pre-Shift Work Time or Post-Shift Work Time in California during the liability period.  Pre-Shift Work Time is the time from when Defendants required employees to report to parking locations prior to employer-mandated travel until the time Defendants began compensating employees for the day (including time spent waiting or traveling between parking locations and worksites).  Post-Shift Work Time is the time from when Defendants ceased compensating employees for the day until the time when employees were able to depart from parking locations after employer-mandated travel, and includes time docked for early departures from work in excess of the amount of time of their early departures.

**Rule 23(a)**

45.    <u>Numerosity.</u>   The Class is so numerous that joinder of all members is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that during the class period Defendants have employed at least hundreds of persons who fall within the Class definition.

46.     <u>Commonality.</u>  Common questions of law and fact exist as to members of the Class.  Because the Defendants subjected Class members to uniform policies and practices

governing employer-mandated travel, time-keeping, compensation, and wage statements, the answers to these questions will produce common answers for all Class members.  Examples of such common questions of law and fact include the following:

- Whether Defendants required Class members to report to designated parking lots at the start of their workdays for employer-mandated travel to their worksites;

- Whether Defendants compensated Class members for all hours worked at the start of their workdays, including from the time they are required to report to designated parking lots for employer-mandated travel;

- Whether Defendants delivered Class members back to designated parking lots after Defendants stopped compensating them;

- Whether Defendants compensated Class members for all hours worked at the end of their workdays, including up to the time they were able to depart after employer-mandated travel back to designated parking lots;

- Whether Defendants are required by California law to pay Class members from the time Defendants require Class members to report to designated parking lots for employer-mandated travel and other hours worked at the start and end of their workdays;

- When Class members departed early from designated parking lots, whether Defendants docked Class members' wages for intervals of time in excess of the amount of time of their early departures;

- Whether California law permits Defendants to dock the wages of Class members for intervals of time in excess of the amount of time of their early departures from designated parking lots;

- Whether Defendants failed to pay Class members the minimum wage for all hours worked, including from the time Defendants require Class members to report to designated parking lots for employer-mandated travel and other hours worked at the start and end of their workdays and for instances when Defendants docked Class members' wages for intervals of time in excess of the amount of time of their early departures from designated parking lots;

- Whether Defendants failed to provide Class members with accurate itemized wage statements;

- Whether Defendants failed to pay Class members all wages due them each payday;

- Whether Defendants failed to pay all wages due at the end of employment;

- Whether Defendants willfully failed to pay all wages due at the end of employment;

- Whether Defendants' policies and practices violated Labor Code §§ 201, 202, 203, 204, 204b, 210, 226, 226.3, 226.6, 558, 558.1, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, and 1199, Business and Professions Code §§ 17200, *et seq.*, and California Industrial Welfare Commission Wage Order No. 16;

- Whether Class members are entitled to declaratory and injunctive relief;

- Whether Class members are entitled to equitable relief including restitution under Business and Professions Code §§ 17200, *et seq.*

47.   Typicality.   Plaintiff's claims are typical of Class members' claims.   Plaintiff, like other Class members, was subjected to Defendants' common policies and practices that violated California law, and sustained injury and economic loss as a result.   Defendants' conduct towards Plaintiff in violating California law is typical of Defendants' conduct towards other Class members in violating California law.

48.   Adequacy.   Plaintiff will fairly and adequately represent and protect the interests of the Class members.   Plaintiff has no interests that are antagonistic to those of the Class and is not subject to any unique defenses.   Plaintiff understands his obligations as class representative, has already undertaken steps to fulfill them, and is prepared to continue to fulfill his duties as class representatives.   Plaintiff's counsel are experienced in employment class actions and will fairly and adequately represent and protect the interests of the Class members.

**Rule 23(b)(2)**

49.   This action is also properly maintainable as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.   Defendants are alleged to have violated California law in a common manner as to all members of the Class.   As such, Defendants have acted or refused to act on grounds that apply generally to the Class, making appropriate declaratory, equitable, and injunctive relief with respect to Plaintiffs and the Class Members as a whole.

50.   The monetary relief that Plaintiff seeks either flows from and/or is incidental to the declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can be calculated in a simple, objective, and mechanical manner.

**Rule 23(b)(3)**

51.     This action is also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The questions of law and fact common to the members of the Class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

52.     Damages are capable of measurement on a class-wide basis.  The propriety and amount of damages are based on Defendants' common conduct, making these issues common to the Class.  Plaintiffs and the Class members will rely on common evidence to resolve their legal and factual questions, including Defendants' policies and records during the relevant period.

53.     Upon information and belief, there is one other pending class action alleging a subset of similar claims solely as to Defendant Cherne on behalf of some Class members. Plaintiff is unaware of any other pending litigation raising the same or similar claims on behalf of all Class members, and is unaware of any action (whether individual or class-based) raising the same or similar claims against Defendants Chevron, Newtron, or Newtron Group.

54.     Class members may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants, and damages suffered by individual Class members are small compared to the expense and burden of individual prosecution of this litigation.

55.     This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, Defendant Chevron resides in this District and all Defendants have substantial business operations in this District, the alleged acts and omissions occurred in this District, and, a significant portion the Class members likely were employed in this District and reside in this District.

56.     There will be no undue difficulties in managing this case as a class action.

**FIRST CLAIM FOR RELIEF**
**Unpaid Wages for All Hours Worked**
**[Labor Code § 1199 and Wage Order 16]**
**(Against All Defendants)**

57.     Plaintiff Clayborne, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

58.     Wage Order 16, Section 5(A) of the California Industrial Welfare Commission requires that "[a]ll employer-mandated travel that occurs after the first location where the employee's presence is required by the employer shall be compensated at the employee's regular rate of pay." Wage Order 16, Section 2(J) defines "[h]ours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

59.     At the start of the workday, Defendants require Plaintiff and the Class to be present at parking lots designated by Defendants for employer-mandated travel to worksites at Chevron's refinery. Plaintiff and the Class are subject to Defendants' control once Defendants require their presence at parking lots designated by Defendants for employer-mandated travel to worksites at Chevron's refinery.

60.     Plaintiff and the Class's hours worked begin when Defendants require their presence at parking lots designated by Defendants for employer-mandated travel to worksites at Chevron's refinery. However, Defendants do not begin compensating Plaintiff and the Class from the time Defendants require their presence at the designated parking lots. Instead, Defendants begin compensating Plaintiff and the Class beginning at a later time after Defendants have delivered them to their worksites at Chevron's refinery.

61.     At the end of the workday, Defendants deliver Plaintiff and the Class back to parking lots designated by Defendants. Plaintiff and the Class are subject to Defendants' control until Defendants deliver them back to the designated parking lots and Plaintiff and the Class are able to depart.

62.     On occasions at the end of the workday, Defendants deliver Plaintiff and the Class back to the designated parking lots and Plaintiff and the Class are able to depart at points in time after Defendants have stopped compensating them.

63.     Thus, Defendants fail to compensate Plaintiff and the Class for all hours worked, including from the time Defendants require Plaintiff and the Class to report to designated parking lots for employer-mandated travel at the start of their workday until the time Plaintiff and the

Class are able to depart from designated parking lots after employer-mandated travel at the end of their workday.

64.     Because of Defendants' policy and practice of not compensating Plaintiff and the Class for all hours worked, including from the time Defendants require Plaintiff and the Class to report to designated parking lots for employer-mandated travel at the start of their workday to the time Plaintiff and the Class are able to depart from designated parking lots after employer-mandated travel at the end of their workday and all other pre- and post-shift work time, Defendants violate Wage Order 16 and Labor Code § 1199, and Defendants owe wages to Plaintiff and the Class at their regular rate of pay for all hours worked, as required by Wage Order 16.  Plaintiff seeks these unpaid wages from Defendants on behalf of himself and the Class.

**SECOND CLAIM FOR RELIEF**
**Unpaid Wages for Docking Employees for Early Departures**
**[Labor Code § 1199 and Wage Order 16]**
**(Against All Defendants)**

65.     Plaintiff Clayborne, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

66.     Wage Order 16, Section 2(J) defines "[h]ours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

67.     When at the end of their workdays, Plaintiff and the Class depart from the designated parking lots before the times specified by Defendants for them to remain at the parking lots, Defendants dock the wages of Plaintiff and the Class in increments of time in excess of the amount of time of their early departures.  The docked increments of time in excess of the amount of time of their early departures are increments of time during which Plaintiff and the Class are subject to Defendants' control.  Defendants thus fail to compensate Plaintiff and the Class for all hours worked.

68.     Because of Defendants' policy and practice of not compensating Plaintiff and the Class for all hours worked, including for increments of time docked by Defendants in excess of Plaintiff and the Class's early departures at the end of the workday, Defendants violate Wage

Order 16 and Labor Code § 1199, and Defendants owe wages to Plaintiff and the Class at their regular rate of pay for all hours worked, as required by Wage Order 16.  Plaintiff seeks these unpaid wages from Defendants on behalf of himself and the Class.

**THIRD CLAIM FOR RELIEF**
**Unpaid Minimum Wage**
**[Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199 & Wage Order 16]**
**(Against All Defendants)**

69.     Plaintiff Clayborne, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

70.     The foregoing conduct, as alleged, violates Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 16, which protect Plaintiff's and the Class's right to earn a minimum wage and provide for damages and penalties for violations of that right.

71.     Defendants' policy and practice of not paying Plaintiff and the Class the minimum wage for all hours worked violates these minimum wage protections of the Labor Code.

72.     Plaintiff, on behalf of himself and the Class, seeks the unpaid minimum wages owed them and liquidated damages pursuant to Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 16.

**FOURTH CLAIM FOR RELIEF**
**Failure to Provide Accurate Itemized Wage Statements and to Keep Proper Payroll Records**
**[Labor Code §§ 226, 226.3, 226.6, 1174, and 1174.5]**
**(Against All Defendants)**

73.     Plaintiff Clayborne, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

74.     The foregoing conduct, as alleged, violates Labor Code § 226(a), which requires employers to provide employees with accurate itemized wage statements.  The wage statements Defendants provide to Plaintiff and the Class omit their hours worked and compensation earned for those hours, including omissions of hours and compensation starting from the time Defendants require Plaintiff and the Class to report to designated parking lots for employer-mandated travel at the start of their workday to the time they are able to depart from designated parking lots after employer-mandated travel at the end of their workday, and all other pre- and

COMPLAINT FOR VIOLATIONS OF CAL. LAB. CODE AND UCL

post-shift hours worked, and for excessive time docked for early departures from work.  Thus, the wage statements Defendants provide to Plaintiff and the Class do not accurately itemize their gross wages earned, their total hours worked, their net wages earned, or all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate. Defendants' violations of Labor Code § 226(a) also make them liable for the civil penalties under Labor Code § 226.3.

75.     Plaintiff and the Class suffered injury due to Defendants' failure to provide them with accurate itemized wage statements because Plaintiff and the Class could not promptly and easily determine from their wage statements alone their total hours worked and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

76.     Defendants' failure to provide Plaintiff and the Class with accurate itemized wage statements was knowing and intentional and was not the result of an isolated and unintentional payroll error due to a clerical or inadvertent mistake, thus violating Labor Code §§ 226 and 226.6.

77.     Defendants do not keep payroll records showing the hours worked daily by Plaintiff and Class members, thus violating Labor Code § 1174(d).  Defendants' failure to maintain these records is willful, thus violating Labor Code § 1174.5.

78.     Pursuant to Labor Code § 226(e), Plaintiff, on behalf of himself and the Class, seeks to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurred and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), as well as costs and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**Failure to Pay All Wages Each Payday**
**[Labor Code §§ 204 and 204b]**
**(Against All Defendants)**

79.     Plaintiff Clayborne, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

80. Employers are required to pay all wages earned to employees each payday. Because Defendants do not pay Plaintiff and the Class for all wages earned, either at their regular rate of pay or at the minimum wage, Defendants do not pay them all wages earned each payday, thus violating Labor Code § 204 and/or Labor Code § 204b.

**SIXTH CLAIM FOR RELIEF**
**Timely Wage Payment Due upon Termination Claim—**
**[Labor Code §§ 201, 202 & 203]**
**(Against All Defendants)**

81. Plaintiff Clayborne, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

82. Labor Code §§ 201 and 202 require Defendants to pay their employees all wages due upon termination within the time specified by law. Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must pay waiting time penalties of the subject employees' daily wage, up to a maximum of thirty days of wages.

83. Plaintiff and Class members who have ceased employment with Defendants are entitled to unpaid wages as described herein, but to date, Defendants have not paid such wages.

84. More than thirty days have passed since Plaintiff and certain Class members left Defendants' employ.

85. Plaintiff, on behalf of himself and the Class members who have left Defendants' employ, seeks thirty days of waiting time penalties pursuant to Section 203.

**SEVENTH CLAIM FOR RELIEF**
**Unfair Competition**
**[Business and Professions Code §§ 17200, *et seq.*]**
**(Against All Defendants)**

86. Plaintiff Clayborne, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

87. The foregoing conduct, as alleged, violates the Unfair Competition Law ("UCL"), Business & Professions Code § 17200 *et seq.* The UCL prohibits unfair competition by prohibiting, *inter alia*, any unlawful or unfair business acts or practices.

88. Beginning at a date unknown to Plaintiffs, but at least as long as four years ago, Defendants committed, and continue to commit, acts of unfair competition, as defined by the

UCL, by, *inter alia*, engaging in the acts and practices described herein.  Defendants' conduct as herein alleged has injured Plaintiff and the Class by wrongfully denying them earned wages, including unpaid wages for pre-shift and post-shift work time, unpaid wages for employer-mandated travel time, docking employees for early departures in excessive time increments, and all other hours worked.

89.    Defendants engaged in unfair competition in violation of the UCL by violating, *inter alia*, Labor Code §§ 201, 202, 203, 204, 204b, 226, 226.3, 226.6, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 16.  Each of these violations constitutes an independent and separate violation of the UCL, and such conduct by Defendants threatens or harms competition.

90.    Defendants' unlawful and unfair business practices and acts, described above, have injured Plaintiff and the Class as a result of Defendants' retention of wages owed to them. Defendants have reaped unfair and illegal profits by retaining these wages from Plaintiff and the Class.  Defendants should be required to disgorge these unfair and illegal profits and restore them to Plaintiff and the Class.

91.    Defendants' unfair and unlawful business practices entitle Plaintiff to seek preliminary and permanent injunctive relief, including but not limited to orders that Defendants cease the unlawful practices alleged herein, and account for, disgorge, and restore to Plaintiff and the Class the wages and other compensation unlawfully withheld from them.  Plaintiff and the Class are entitled to restitution of all monies to be disgorged from Defendants in an amount according to proof at the time of trial.  Plaintiff seeks all such restitution on behalf of himself and the Class.

### EIGHTH CLAIM FOR RELIEF
**Private Attorneys General Act Violations**
**[Labor Code §§ 2698, *et seq.*]**
**(Against All Defendants)**

92.    Plaintiff Clayborne, on behalf of himself and all aggrieved employees of Defendants, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

93.     Pursuant to Labor Code § 2699(c), an "'aggrieved employee' means any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." PAGA provides that any provision of law under the Labor Code that sets forth a civil penalty to be assessed and collected by the Labor and Workforce Development Agency ("LWDA"), may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures outlined in Labor Code § 2699.3.

94.     As a result of the California Labor Code violations that Defendants committed against Plaintiff and other current and former employees of Defendants, Plaintiff and his fellow employees of Defendants are all "aggrieved employees" of Defendants within the definition of Labor Code § 2699(c). As an aggrieved employee, Plaintiff seeks, on behalf of himself and his fellow aggrieved employees of Defendants and on behalf of the State of California, to recover civil penalties from Defendants under Labor Code §§ 2699, 210, 226.3, 558, 1174.5, and 1197.1, and Wage Order 16, § 18 for Defendants' Labor Code violations set forth above, including Defendants' violations of Labor Code §§ 201, 202, 203, 204, 204b, 226(a), 226.6, 558.1, 1174(c) and (d), 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 16.

95.     Pursuant to Labor Code § 2699.3, an aggrieved employee may commence a civil action arising under Labor Code § 2699 after the following requirements have been met:

a. The aggrieved employee or representative shall give written notice by filing online with the LWDA and by certified mail to the employer of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violation. A $75 filing fee should accompany the notice.

b. For violations of any provision listed in Labor Code § 2699.5, the LWDA shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation within 60 calendar days of the postmark date of the notice received. Upon receipt of that notice or if no notice is provided within 65 calendar days of the postmark date of the notice, the aggrieved employee may commence a civil action pursuant to Section 2699. For violations of

any provision other than those listed in Labor Code § 2699.5 or Division 5, the aggrieved employee may commence a civil action pursuant to Section 2699 if the employer has not cured the violations within 33 calendars of the postmark date of the notice.

96.     On or about July 17, 2019, Plaintiff gave timely written notice by certified mail to Defendants of Defendants' violations of Labor Code §§ 201, 202, 203, 204, 204b, 218.5, 226(a), 226.3, 226.6, 558, 558.1, 1174(c) and (d), 1174.5, 1194, 1194.2, 1197, 1197.1, and 1199, and Wage Order 16 alleged in this Complaint, including the facts and theories to support the alleged violations, and Plaintiff filed the notice online with the LWDA.  Plaintiff also paid the accompanying filing fee of $75.00.  Plaintiff has complied with all notice and exhaustion procedures as required by PAGA.[1]

97.     The LWDA did not provide notice of its intention to investigate Defendants' violations of provisions listed in Labor Code § 2699.5 by the expiration of the 65-day waiting time period.  Defendants have not cured the violations of provisions other than those listed in Labor Code § 2699.5 or Division 5 by the expiration of the 33-day period.  Consequently, Plaintiff's right to file the instant lawsuit then duly accrued.

98.     Therefore, Plaintiff has complied with all of the requirements set forth in Labor Code § 2699.3 to commence a representative action under PAGA.

99.     Plaintiff, on behalf of himself, his fellow aggrieved employees, and on behalf of the State of California, seeks civil penalties under PAGA, 75% of which will be distributed to the State of California, and 25% of which will be distributed to Plaintiff and his fellow aggrieved employees.  Under this PAGA action, Plaintiff is also entitled to an award of reasonable attorney's fees and costs.

100.    Pursuant to Labor Code § 2699, Plaintiff is entitled to recover civil penalties in the amount of one hundred dollars ($100) for each aggrieved employee per pay period for the initial

---

[1] On September 27, 2019, Plaintiff filed an Amended PAGA Claim Notice with the LWDA and mailed the notice to Defendants, adding Labor Code section 210 to the Labor Code statutes violated by Defendants.

COMPLAINT FOR VIOLATIONS OF CAL. LAB. CODE AND UCL

violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation, for Defendants' violations of Labor Code §§ 201, 202, 203, 204, 204b, 226(a), 226.6, 558.1, 1174(c) & (d), 1194, 1194.2, 1197, 1197.1, and 1199, and Wage Order 16, as well as the civil penalties specifically provided in Labor Code §§ 2699, 210, 226.3, 558, 1174.5, and 1197.1, and Wage Order 16, § 18, plus reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for relief as follows:

A.      Certification of the Class;

B.      Designation of Plaintiff as Class representative and Plaintiff's counsel of record as Class Counsel;

C.      Recognition of Plaintiff as PAGA representative and Plaintiff's counsel of record as PAGA Counsel for the aggrieved employees and on behalf of the State;

D.      A declaratory judgment that the practices complained of herein are unlawful and violate Wage Order 16, the California Labor Code, and UCL;

E.      A preliminary and permanent injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein;

F.      An award of damages according to proof;

G.      Statutory penalties;

H.      Civil penalties pursuant to PAGA;

I.      Restitution pursuant to Business & Professions Code §§ 17200 *et seq.* according to proof;

J.      Pre-judgment and post-judgment interest, as provided by law;

K.      Attorneys' fees, pursuant to Labor Code §§ 218.5, 226(e), 1194, and 2699, Code of Civil Procedure § 1021.5, and all other bases for fees under the law;

L.     Costs of suit, including expert fees and costs, pursuant to Labor Code §§ 218.5, 226(e), 1194, and 2699, Code of Civil Procedure § 1021.5, and all other bases for costs under the law;

M.     An appropriate service payment to Plaintiff for his service as Class representative and as the PAGA representative; and

N.     Such other and further legal and equitable relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims alleged herein.

Respectfully submitted,

Dated:  October 2, 2019                    By:    /s/ Jahan C. Sagafi

Jahan Sagafi (Cal. Bar No. 224887)
Moira Heiges-Goepfert (Cal. Bar No. 326861)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: jsagafi@outtengolden.com
Email: mhg@outtengolden.com

Steven Elster (Cal Bar. No. 227545)
LAW OFFICE OF STEVEN ELSTER
785/E2 Oak Grove Road, No. 201
Concord, CA 94518
Telephone: (925) 324-2159
E-Mail: steve.elster.law@gmail.com

*Attorneys for Plaintiff and Class Members*